IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ELNORA MADKINS**                                                                                      **PLAINTIFF**

**v.**         **CIVIL CASE NO. 3:24-CV-06-RP**

**COMMISSIONER OF
SOCIAL SECURITY**        **DEFENDANT**

## OPINION AND JUDGMENT

Pursuant to 42 U.S.C. § 405(g), the plaintiff Elnora Madkins brought this action for judicial review of an unfavorable decision of the Commissioner of Social Security regarding an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under 28 U.S.C. § 636(c). ECF #17. The undersigned held a hearing on July 10, 2024. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel, and the applicable law, the court finds the Commissioner's decision is supported by substantial evidence and should be affirmed.

### Standard of Review

In determining disability, the Commissioner, through the Administrative Law Judge ("ALJ"), works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove [he] is not currently engaged in

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).
[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

substantial gainful activity.[3]  Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4]  At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5]  If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7]  If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard.  *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim.  *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983).  The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds

---

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).
[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).
[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010).  If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).
[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).
[7] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).
[8] *Muse*, 925 F.2d at 789.
[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## **Commissioner's Decision**

At step one of the sequential evaluation process, the ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 21, 2018. At step two, he found that the plaintiff had the severe impairments of anxiety, tendonitis of the shoulders, osteoarthritis, and degenerative disc disease. At step three, he found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ then determined that the plaintiff has the residual functioning capacity ("RFC") to perform light work, except:

> [T]he individual can lift and carry up to ten pounds. She can occasionally stoop. She can frequently grasp, handle, feel, and finger. She can never climb ladders, ropes, or scaffolds. She can perform tasks that are simple in nature and can be performed in a routine work setting. She can frequently interact with others in the work setting.

---

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

At step four, the ALJ found that the plaintiff is not capable of performing any of her past relevant work. Finally, at step five, the ALJ found that considering the plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as the representative light, unskilled jobs of router, routing clerk, and cashier II. Accordingly, the ALJ concluded that the plaintiff is not disabled.

## Discussion

The plaintiff argues primarily that the ALJ improperly evaluated the administrative medical findings and medical opinions in the record. First, as to the finding of state agency psychologist Vicki Prosser, who found the plaintiff can interact appropriately with coworkers and supervisors "on a limited basis," the plaintiff correctly points out that the ALJ in his decision failed to mention this finding -- let alone articulate how persuasive he found it as required by the applicable regulations. 20 C.F.R. §§ 404.1520c(b) and 416.920c(b). However, procedural perfection in administrative proceedings is not required, and the court will not vacate a decision "unless the substantial rights of a party have been affected." *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988). Procedural errors affect the substantial rights of a claimant only when they "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir. 1988). Remand is required only when, absent the procedural error, there is a realistic possibility that the ALJ would have reached a different conclusion. *January v. Astrue,* 400 Fed.Appx. 929, 933 (5th Cir. 2010) (per curiam). The plaintiff bears the burden of showing that the ALJ's error was prejudicial. *Jones v. Astrue,* 691 F.3d 730, 734 (5th Cir. 2012).

In the present case, consistent with Dr. Prosser's finding that the plaintiff can interact with coworkers and supervisors on a limited basis, the ALJ limited the plaintiff to frequent interaction with others in the work setting. There is nothing in Dr. Prosser's assessment that indicates she found the plaintiff to be more limited in that regard than the ALJ did. In fact, Dr. Prosser and the ALJ both found the plaintiff to be moderately limited in the ability to interact with others. There is nothing to suggest that if the ALJ had articulated how persuasive he found Dr. Prosser's finding to be, he may have assessed a greater limitation in the plaintiff's ability to interact with others in the work setting. The procedural error here is harmless.

As to the medical findings of state agency physicians Carol Kossman and Glen James, who found the plaintiff capable of performing a full range of light work, the plaintiff argues that the ALJ, noting the plaintiff's longitudinal treatment for degenerative changes to the lumbar spine and decreased range of motion during examinations, erred in finding these findings partially persuasive while not imposing greater standing and walking limitations. According to the plaintiff, "decreased range of motion" logically means less than light standing and walking limitations. However, this is not a mandatory conclusion, and it is clear to the court that the ALJ did not reach it. Rather, the ALJ limited the plaintiff to a reduced range of light work, including limitations in stooping and climbing -- limitations which are no less logical than the standing and walking limitations urged by the plaintiff. There is no error here.

The plaintiff also complains that the state agency physicians made their findings without the benefit of a subsequent x-ray of the plaintiff's lumbar spine showing moderate to severe degenerative disc disease at L5-S1 and mild or early degenerative disc disease at L3-4. However, it is not at all uncommon for the Commissioner to receive important medical evidence after the state agency physicians have made their findings, and this does not mean that the

administrative medical findings must necessarily be found unpersuasive as the plaintiff seems to suggest. A state agency consultant's lack of opportunity to review all treatment records does not prevent an ALJ from relying on the consultant's assessment if the ALJ conducts an independent review of all the evidence, including the records the consultant did not consider. *Carter v. Astrue,* 886 F.Supp.2d 1093, 1111-12 (N.D. Iowa 2012); *Boothe v. Colvin,* No. 3:12-CV-5127-D, 2013 WL 3809689, at *4 (N.D. Tex. July 23, 2013). The ALJ in this case independently reviewed and discussed the subject x-ray results, and in fact the ALJ cited degenerative changes to the lumbar spine as a reason for finding the state agency physician's assessment of a full range of light work only partially persuasive. There is no error here.

As to the medical opinion of the plaintiff's treating physician William Booker, who opined that the plaintiff has less than sedentary exertional limitations, the plaintiff argues that in finding this opinion unpersuasive, the ALJ ignored Dr. Booker's treatment notes indicating decreased range of motion in the spine. However, in finding a medical opinion to be unpersuasive, an ALJ is not required to recite every scrap of medical evidence that the plaintiff believes is supportive of that opinion. The ALJ certainly considered the plaintiff's decreased range of motion of the lumbar spine and discussed it elsewhere in the opinion, and it is clear the ALJ did not believe Dr. Booker's assessment of a less than sedentary RFC is supported by the record. For instance, the ALJ noted the plaintiff's negative straight leg raising bilaterally and normal gait without the use of an assistive device. The ALJ's evaluation of Dr. Booker's opinion is supported by substantial evidence.

The plaintiff also complains that the ALJ did not specifically discuss how he considered Dr. Booker's opinions as to the plaintiff's likely time off task due to her impairments and the plaintiff's limitations in the use of her hands. However, "the ALJ is not required to articulate how he considered every opinion within a medical source's report." *Triplett v. Commissioner of Social Security,* No.

1:20-CV-243-RP, 2021 WL 5016028, at *2 (N.D. Miss. Oct. 27, 2021) (citing 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion … from one medical source individually.")). Rather, when a medical source gives multiple medical opinions, "we will articulate how we considered the medical opinions … from that medical source together in a single analysis" using the appropriate factors. 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). There is no error here.

As to the opinion of psychologist Pamela Buck, who performed a consultative examination of the plaintiff and opined that the plaintiff is unable to perform routine, repetitive tasks consistently or respond appropriately to coworkers and supervisors, the plaintiff argues that the ALJ's finding that this opinion is unpersuasive is erroneous in light of record evidence that the plaintiff's depressive disorder is caused primarily by her chronic pain. However, the question before the court is not whether there is substantial evidence that supports Dr. Buck's opinion. There may well be. Rather, the question on appeal is whether there is substantial evidence supporting the ALJ's finding that Dr. Buck's opinion is unpersuasive. There is, and the ALJ discusses it in explanation of his persuasiveness finding.

As to the opinion of the plaintiff's mental health therapist Ina Jemerson, who indicated the plaintiff has poor abilities in most areas of mental functioning, the plaintiff argues that the ALJ erred in finding this opinion unpersuasive without discussing the factor of "supportability" as required by the applicable regulations. However, although the ALJ did not use the word "supportability," he contrasted – at length -- the therapist's opinion with treatment notes from the therapist's own treatment facility. A medical source's own objective medical evidence, along with supporting explanations, are precisely what define "supportability." 20 C.F.R. §§

404.1520c(c)(1) and 416.920c(c)(1).  The ALJ did not fail to explain how he considered this factor.

Next, the plaintiff argues that the ALJ committed error at step five of the sequential evaluation process by relying on vocational expert testimony that an individual who can lift and carry no more than 10 pounds can perform the identified jobs which are classified as light in the Dictionary of Occupational Titles.  The plaintiff contends this violates SSR 00-4P, which states, "Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling."  2000 WL 1898704, at *3.  According to the plaintiff, because "light work" is defined as involving "lifting no more than 20 pounds at a time," 20 C.F.R. § 404.1567(b), the ALJ may not rely on VE testimony that an individual limited to lifting no more than 10 pounds can perform certain identified jobs classified as light in the DOT.  However, the plaintiff misinterprets SSR 00-4P.

The meaning of the above quotation in SSR 00-4P is clarified in the very next sentence: "For example, if all available evidence (including VE testimony) establishes that the exertional demands of an occupation meet the regulatory definition of "medium" work (20 CFR 404.167 and 417.967), the adjudicator may not rely on VE testimony that the occupation is 'light' work." 2000 WL 1898704, at *3.  That is not what occurred in this case.  To the contrary, not all of the available evidence established that the lifting demands of the identified jobs meet the regulatory definition of "light" work (the VE testified otherwise), nor did the VE testify that those jobs are "sedentary" work.  Rather, based on his experience, education and research, the VE explained why an individual limited to performing the hypothetical reduced range of light work could perform those jobs, which according to the VE do not require much lifting.  In obtaining this

explanation, the ALJ complied with SSR 00-4P, which states that if the VE's testimony appears to conflict with the DOT, "the adjudicator will obtain a reasonable explanation for the apparent conflict." *Id.* at *4.

If the plaintiff's argument on this issue were to be sustained, then this would mean that an individual limited to lifting 10 pounds must automatically be limited to work classified in the DOT as sedentary. However, this is not what the regulations and social security rulings contemplate. The regulatory definition of light work itself acknowledges that a job that involves a good deal of walking or standing, or that involves sitting most of the time with some pushing and pulling of arm or leg controls, may still be in the light category "[e]ven though the weight lifted may be very little." 20 C.F.R. § 404.1567(b). Further, SSR 83-12 expressly contemplates situations where, as here, "the [grid] rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work." 1983 WL 312253, at *3. In such cases, "more difficult judgments are involved as to the sufficiency of the remaining occupational base," and VE assistance "is advisable for these types of cases." *Id.* In the present case, the ALJ limited the plaintiff to a reduced range of light work, called on the VE to assist with assessing the sufficiency of the remaining occupational base, and obtained a reasonable explanation for the apparent conflict between the VE's testimony and the DOT with respect to the lifting requirements of the identified light jobs. There is no error here.

Finally, the plaintiff argues that the ALJ erred in his consideration of her headaches, which he found to be a non-severe impairment at step two of the sequential evaluation process. Specifically, the plaintiff takes issue with the ALJ's statement in the RFC discussion that "[t]he record does not contain evidence of alleged headaches," whereas the record does in fact contain

evidence of headaches. However, the court views this statement as an inadvertent misstatement, as in the decision's step two discussion the ALJ acknowledges that the plaintiff "has or had headaches." Finding the plaintiff's headaches to be non-severe, the ALJ noted, "The record contains no evidence that the claimant received longitudinal treatment for headaches, or that she received treatment for a primary headache disorder during the relevant period." This suggests that in making the subsequent statement that "the record does not contain evidence of alleged headaches," what the ALJ meant is that the record does not contain evidence *of longitudinal treatment* of alleged headaches.

Whether a claimant has received continuing and regular treatment for migraine headaches is among the "medical signs" to be considered as objective evidence of the severity of a claimant's migraines. *Wiltz v. Barnhart,* 484 F.Supp.2d 524, 532-33 (W.D. La. 2006). The court finds no error in the ALJ's step two finding as to the severity of the plaintiff's headaches, and certainly no reversible error, as the ALJ's decision did not turn on the step two finding. *See Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir. 1988) (holding step two error "does not require a remand when the Secretary has gone beyond the second step, as here, as not all 'severe' impairments are disabling."). Where the ALJ finds other impairments to be severe and proceeds to subsequent steps in the sequential analysis, any *Stone* error at step two is harmless and remand is not required unless the plaintiff shows that she is so functionally impaired by the subject impairment that she is precluded from engaging in substantial gainful activity. *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012) (citing severity standard set forth in *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985)).

The plaintiff argues that in evaluating the functional limitations caused by her headaches, the ALJ should have relied on her reports at consultative examinations describing the effects of her headaches, which evidence is also among the medical signs to be considered as objective evidence of

the severity of a claimant's migraines. *Wiltz,* 484 F.Supp.2d at 532-33. Even so, an ALJ may rely on lack of treatment as an indication of non-disability. *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990). The plaintiff's argument essentially asks the court to reweigh the evidence in her favor, which the court may not do.

For these reasons and for those announced on the record at the conclusion of oral arguments in this case, the Commissioner's decision is AFFIRMED.

This, the 25th day of July, 2024.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE